## WELCH v. SILVERS et al.

### No. 9057.

Court of Civil Appeals of Texas. San Antonio.

April 19, 1933.

Rehearing Denied May 10, 1933.

Morriss & Morriss, of San Antonio, for appellant.

Ditzler H. Jones, of Uvalde, and J. E. Friestman, of Leakey, for appellees.

SMITH, Justice.

Prior to her marriage to her present husband, Rosa Silvers, then Rosa Priest, a widow, and her three brothers and sisters, inherited a section of 640 acres of land in Real county, which was conveyed so that Rosa Silvers took title to 160 acres thereof. She and her children by her first marriage occupied the land as the family homestead.

In 1917 Rosa Priest married Zeno Silvers and with him and her children continued for the time to make their home on said land.

In 1918, however, the Silvers, husband and wife, purchased from R. D. Harper a 1,280-acre place in a distant part of Real county, for the avowed purpose of making their permanent home thereon. In part consideration for the new place the Silvers executed to Harper three notes, for an aggregate sum of $1,000, and to secure the payment of said notes further executed their deed of trust upon the 160-acre tract theretofore constituting their homestead. As a condition to this transaction the Silvers solemnly executed and acknowledged a relinquishment of their homestead claim upon the 160-acre tract and an express designation of a particular 200-acre parcel of the 1,280 acres as their new homestead. In this instrument of relinquishment and designation the Silvers declared that "we * * * are desirous of obtaining a place of convenience, comfort and proportions for us a permanent home and in fact we have found such a place, being one that suits our purpose in every respect, * * * (describing the new place) and we have made application on or about August 1st, 1918, to R. D. Harper, the owner of said land, for its purchase, he requiring a cash payment of $1000.00 and we not having such cash payment, executed our promissory notes to said Harper * * * which said notes are to be accepted by said Harper for such cash payment on said 1280 acres of land only on conditions that the payment of the same be secured in part by a mortgage lien on the following described tract of land owned by us, to-wit: —160 acres * * * Tract of land of 160 acres is not our homestead nor any part of same, we not residing on same nor claiming same nor any part thereof as our homestead but we now have a homestead conveyed to us, this day before the signing and execution of these presents, by the said R. D. Harper, containing 1280 acres of land first above describ-

ed out of which we hereby set apart and designate specifically 200 acres in a square * * * and which 1280 acres and our homestead of 200 acres thereof we could not have obtained without first having agreed to encumber our 160 acres above described to secure in part the above described three promissory notes * * * the said R. D. Harper accepts this instrument containing the statements made by us therein in good faith, relying upon the truthfullness of the representations therein made."

The Silvers thereupon moved out of their old homestead, thus abandoned, and into their new home thus acquired and designated and made their home therein for all purposes for the ensuing four years, when, in 1922, they reconveyed 853 acres of the 1,280-acre tract, including their home 200 acres, to Harper (having in the interim sold to another the remaining 426 acres of the 1,280) who thereupon released the Silvers from their indebtedness to him.

The Silvers did not thereupon return to or take any steps to reassert a homestead claim upon the 160-acre tract, nor had they ever done so up to the time the cause of action here sued on arose. Instead, they moved about from one place to another, near the Harper 1,280 acres, during the ensuing year; in 1923 they leased another place in the same vicinity, remaining thereon for three years; then they moved to another nearby place which they have occupied as their home for the last six years, and still so occupy it.

In December, 1930, appellant, L. B. Welch, obtained judgment against Mr. and Mrs. Silvers for $435, upon which execution was issued, and the 160-acre tract involved was levied upon and sold at sheriff's sale, and thereupon conveyed to Welch. The Silvers thereupon brought this action against Welch to recover title and remove cloud therefrom, and recovered as prayed for. Welch has appealed.

Appellees assail appellant's claim of ownership upon the grounds that (a) the judgment under which he claims "insofar as it was against appellee Rosa Silvers, a married woman, was void, in that the petition in that cause did not specifically allege that the suit was for necessaries furnished her, nor for tort committed by her, etc., and the judgment could not, therefore, support the sale thereunder of the property in question, it having been her separate property and (b) because the property at time of levy and sale was the homestead of appellees."

■ We conclude that appellees' claim of homestead is untenable in the face of the undisputed record. Appellees clearly, unmistakably, completely abandoned the 160-acre tract as a homestead, both by express relinquishment, deliberately and solemnly executed, acknowledged, recorded, as well as by physical abandonment of the old and selection, adoption, possession, and occupancy of the new.

By this process the abandonment was absolute, and the place was thereby completely divested of its homestead character, and by the same process the new place was invested with that character.

■ In this situation the old place could not be restored to the status and given the renewed character of a homestead except by overt acts of the Silvers coupled with and in pursuance and manifestation of an intention on their part to make it their permanent homestead.

The Silvers did nothing to manifest such intention, if any they had. They made their home on the Harper place for four years: they made their temporary home in several different places in the Harper neighborhood during the next year; then in one place nearby during the ensuing three years; then in still another nearby place during the next six years, down to the moment of the trial. These several places were located in a distant part of the county from the 160-acre place.

■ If their hearts yearned for the old place, they did nothing to manifest it. If they had any degree of intention to ever again make their home there, they gave no expression to such intention by word or deed or otherwise. There was nothing to prevent them from carrying out such intention, if any such they had, for they owned the place, free of incumbrance or other obstacle to their return, and they owned no other place. Fifteen years have passed, with still no manifestation of such intention, except that on the day the place was sold under the hammer, after failing that morning to negotiate a postponement, appellees executed and filed for record a redesignation of the 160-acre tract as their homestead. This act, coming at that moment under those conditions, had the effect of negativing rather than supporting the homestead claim.

Appellees have not pressed their claim that the judgment against Rosa Silvers was void because of the insufficiency of the pleadings to subject her, a married woman, or her separate property, to said judgment. Appellees have apparently retreated from that position in the face of the defense that the same is a collateral attack upon a judgment not void, but only voidable at its worst.

The judgment is reversed and judgment will be here rendered that appellees take nothing of appellant in this suit, and that appellant go hence with his costs.